Crumrine *v.* Estate of Crumrine.

Filed March 26, 1896.

---

No. 1,849.

## CRUMRINE *v.* ESTATE OF CRUMRINE.

EVIDENCE.—*Sufficiency.*—*Special Finding.*—A finding that a note executed by a married woman and her husband to their son was without consideration, and merely as surety as to her, is sustained by evidence of the payee that he had charged nothing to her account before the execution of the note, and that he was unable to state any work he had done for her.

SAME.—*Sufficiency.*—*Special Finding.*—*Note.*—*Title.*—A finding that a note executed by plaintiff to his father belonged to his mother, is sustained by evidence that it was in the latter's possession at her death, a few months after that of the father, and that plaintiff was her administrator, listed the note as hers, caused it to be appraised as such, and so held it at the time of the trial.

SAME.—*Concert of Action.*—*Claims against Estate.*—Evidence that two brothers of plaintiff had each filed a claim against the estate of their father and mother for taking care of them during part of the time in which plaintiff testified that he was working for his mother, is admissible, where the circumstances show that all three were acting together to recover claims against the estate.

NEW TRIAL.—*Newly Discovered Evidence.*—*Diligence.*—A new trial for newly discovered evidence is properly refused for want of diligence where the affidavit of the alleged newly discovered witness states that he knows the facts to which he will testify because he worked with the party making the motion.

PROMISSORY NOTE.—*Transfer.*—A valid transfer of a note may be made after the death of the payee.

VOL. 14—41

SAME.—*Signature to.*—A note is signed by its maker where she writes her own name thereto, or it is written by another in her presence and by her direction, either with or without her mark.

INSTRUCTION TO ¦JURY.—*When Properly Refused.*—An instruction which as written does not accurately state the law is properly refused.

SAME.—*Burden of Proof.*—*Signature to Note.*—An instruction that it devolved on plaintiff to show that the deceased signed and delivered the note on which suit is brought is proper where the burden of proving the execution of such note rests upon him.

INTEREST.—*Note.*—*When Allowable.*—Interest is properly allowed upon a note from its maturity, although it does not specifically call for interest.

APPELLATE PROCEDURE. — *Bill of Exceptions.* — *Affidavits.* — *New Trial.*—The trial court does not, by incorporating in a bill of exceptions affidavits used on a motion for new trial, thereby adopt them as his own so as to establish the truth of the facts therein set forth.

From the Wabash Circuit Court.

*H. C. Pettit,* for appellant.

*A. H. Plummer* and *C. Flinn,* for appellee.

GAVIN, C. J.—Appellant being the administrator of the estate of Susannah Crumrine, his mother, filed a claim against it upon a note reading as follows :

"WABASH, IND., June 2, 1886.
"After our death we promise to pay to the order of Joel Crumrine, $500, with 6 per cent. interest until paid.                                 JACOB CRUMRINE.
                                "SUSANNAH CRUMRINE."

In addition to this, appellant claimed $59.20, as due upon an account. An answer of general denial was filed together with special answers of want of consideration, coverture and suretyship, and set-off based upon a note of $100, executed by appellant to Jacob Crumrine, September 18, 1891, and by him in his lifetime assigned by delivery to Susannah. A trial by jury resulted in a general verdict in favor of appellee for $53. The var-

ious causes for reversal argued here arise upon the motion for new trial.

There was evidence to show the following state of facts: Jacob and Susannah Crumrine were husband and wife. They lived in Ohio until 1884, when they moved to Wabash county, Indiana. They had seven children, of whom appellant Henry and Samuel Crumrine and a daughter, Mrs. Varner, were the younger. About 1868 or 1870, appellant moved to Indiana. Jacob owned the farm and a mill in Ohio, and also the land purchased in Indiana, until, in 1886, the Indiana land was transferred to Susannah, who up to that time had owned no land. Appellant worked upon his father's farm and mill in Ohio, and did some work upon the farm in Indiana. Prior to the execution of the note sued on, appellant had kept no account against his father and mother for work and labor done.

Upon examination of appellant under the statute, it was disclosed that the $500 note was given in renewal of a $400 note. He was then asked, "Who signed the first note for which this one, you say, was given in renewal?" He made answer, "Jacob Crumrine."

He was also asked:

"Quest. What, if anything, did your mother Susannah Crumrine owe you at the time of the execution and delivery of the note to you, which you have filed as a claim against her estate?" "Ans. I had charged her no account. She simply gave me the note, or father and mother gave me the note, and said it was for what they owed me." He said further: "I knew I had done a good deal of work for her and father."

"Quest. Name a single thing that you had done for your mother at that time that you hadn't been paid for." "Ans. I don't know that I can."

There is evidence that the makers of the note both

stated that this and other notes given to other children about the same time were given for what they owed the payees for work done for them. Also that the appellant stated that the note was given to make him even with the older children who had received more than he had.

Taking these facts and the other circumstances surrounding the transactions, we are of opinion that the jury was authorized to find that as to Susannah Crumrine the note was executed without any consideration and merely as surety. The jury might rightfully have found that Susannah never was under any legal liability to pay for the work done, even if the father was. Jacob Crumrine died in the spring of 1893, and Susannah, in the fall of the same year. The $100 note was in the possession of Susannah at the time of her death. One son was administrator of Jacob's estate. He had knowledge of the execution of the $100 note to Jacob, but made no claim for it nor any inquiry about it. The appellant was the administrator of his mother's estate and listed the $100 note as hers, caused it to be appraised as such and so held it at the time of the trial. Under these circumstances the jury was authorized in a suit against appellant to find that she was the owner of the note.

The evidence of appellant's account was not sufficiently clear and definite to authorize us to say that it was all proven absolutely and without dispute. We are, therefore, of opinion that the verdict was not for too large an amount.

Appellant sought a new trial that he might prove by one Madison Crumrine, that in 1868, 1869 and 1870, appellant worked as a hand for his father and mother in Ohio. The affidavit of the witness states that he knows the facts because he worked along with appellant. If he did, appellant ought certainly to have been aware

of the fact and should have inquired of him concerning his knowledge of the matters involved.    It is clear that no diligence is shown.    *Huntington White Lime Co.* v. *Mock,* 14 Ind. App. 221; *East* v. *McKee,* 14 Ind. App. 45.

The circumstances of this case were peculiar.    The three brothers with claims on notes evidently executed as part of one system were plainly acting together.    They were supporting by their evidence each other's claims. Taking it all in all, and in the light of the restrictions as to its influence laid down by the instructions, there was not harmful error in permitting proof on cross-examination that one of them had filed a claim of $3,100 for taking care of the old folks during a part of the period in which the witness was testifying that appellant was working for his mother.

For the same reasons and possibly others, there was no error in admitting evidence of the existence of the other notes claimed by the two brothers.

We are not in accord with appellant's position that it was essential to prove a transfer of the $100 note by Jacob Crumrine in his lifetime.    The court instructed the jury that it was essential to show a transfer of the note to Susannah in her lifetime.    If Susannah owned the note at the time of her death, that was sufficient whether she acquired it before or after Jacob's death. Any want of harmony between the proof and averment would be a mere variance and not a failure of proof. *Steinke* v. *Bentley,* 6 Ind. App. 663.

The instruction presented by appellant was rightly rejected.    When the instruction as written does not accurately state the law, it may be refused.    *Rogers* v. *Leyden,* 127 Ind. 50.

Appellant had no just cause for complaint that the court instructed the jury that it devolved upon the

appellant to show that the deceased signed and delivered the note. The burden was upon him to prove the execution of the note. Its execution implies both a signing and a delivery. *Nicholson* v. *Combs*, 90 Ind. 515.

The note was "signed" by the maker if she either wrote her own name thereto, or if it was written by another in her presence or by her direction, either with or without her mark. *Nye* v. *Lowry*, 82 Ind. 316; *Carver* v. *Carver*, 97 Ind. 497; section 240, subd. 9, R. S. 1894.

The adverse theories of appellant and appellee as to the consideration of the note, whether given for work and labor or merely to equalize appellant with the other children and for love and affection, and whether or not it was a mere gift, or whether deceased was surety, were all properly involved by the issues, and were, as we construe the charges, fairly and clearly submitted to the jury. We do not think the jury could under them have failed to give appellant his just dues, had it found with him upon the material questions of fact.

Interest was properly allowed upon the $100 note from its maturity, even though it did not specifically call for interest. The instruction criticised does not purport to deal with the account nor lay down the rule for the measure of the damages thereon.

The fourth instruction when fairly construed does not mean that if the deceased was a married woman at the time of the execution of the note it was unenforceable unless she received some consideration therefor *at that time*, but simply that it was unenforceable if she received no consideration therefor at all.

One cause for new trial is based upon improper statements and comments made by counsel during argument. The facts upon which this cause is founded are in no way presented to us other than by the affidavits accom-

panying the motion for a new trial which are properly incorporated in the bill of exceptions. The judge, however, does not certify to their correctness, nor does the fact that any objection was made at the time, or any exception taken, appear other than by the affidavits. The judge did not by incorporating the affidavits in the bill thereby adopt their statements as his own.

No available error can, therefore, be predicated upon this cause. *Choen* v. *State*, 85 Ind. 209 ; *Buscher* v. *Scully*, 107 Ind. 246 ; *Ahlendorf* v. *First Nat'l Bank*, 6 Ind. App. 316 ; 2 Elliott Gen. Pr., section 695.

Upon an examination of the entire record, we are strongly impressed with the belief that appellant's cause was fairly tried and rightly determined.

Judgment affirmed.

Filed March 27, 1896.